**CONOPCO, INC., Plaintiff,**

v.

**ROLL INTERNATIONAL CORPORATION and Paramount Farms, Inc., Defendants.**

**No. 99 CIV. 1611 DC.**

United States District Court, S.D. New York.

Nov. 16, 1999.

Gibson Dunn & Crutcher LLP, By Randy M. Mastro, Robert F. Serio, Daniel Fetterman, New York City, for Plaintiff.

Loeb & Loeb LLP, By Maria L. Zanfini, Hillel Chodos, New York City, for Defendants.

### *MEMORANDUM DECISION*

CHIN, District Judge.

In this diversity case, plaintiff Conopco, Inc. ("Conopco") sues defendants Roll International Corporation ("Roll") and Paramount Farms, Inc. ("Paramount") for breach of contract and unjust enrichment. Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), contending that this action is barred by California statutory law and Conopco's failure to arbitrate. Alternatively, defendants move to dismiss or stay this action in deference to a pending California action.

The California Code of Civil Procedure contains a compulsory counterclaim rule: a defendant in an action must file a counterclaim (or "cross-complaint") asserting any cause of action "related" to plaintiff's claim. If the defendant fails to do so, the claim is waived and the defendant may not assert the claim in a new action.

Here, Conopco failed to file a cross-complaint for a related claim in the California proceedings. It seeks to circumvent the California rule by filing the claim here in this action, and argues that the California rule does not apply because no final judgment has been entered in the California proceeding. The California rule does not, however, require a final judgment, and thus Conopco's interpretation of the rule must be rejected. The motion to dismiss is granted. Conopco's remedy is to seek relief in the California proceedings. I do not reach defendants' alternative motion.

### *BACKGROUND*

#### A. *The Contract*

On June 28, 1995, Conopco entered into a purchase agreement (the "Purchase Agreement") with Roll pursuant to which Conopco agreed to transfer certain assets used in the operation of Conopco's Sunkist brand "fruit roll" snack business to a newly formed California limited liability company, ninety-nine percent owned by Conopco and one percent owned by Roll. (Compl. ¶¶ 7–8; Purchase Agreement, annexed to Compl. as Ex. A). One of the assets to be transferred was the fruit roll inventory (the "Inventory"). The Purchase Agreement further contemplated that on the closing date, Conopco would transfer its interest in the new company to Roll, and that Paramount would assume certain of Roll's rights and liabilities, including Roll's right to the Inventory. (Compl.¶¶ 8–9). The closing occurred on or about July 28, 1995. (Compl.¶ 9).

Conopco and Roll used the book value of the Inventory on December 31, 1994, $3,060,000, in calculating the purchase price. Because the actual book value of the Inventory on the date of the closing was likely to be different from the December 31, 1994 figure used in the initial calculation, Conopco and Roll agreed to adjust the purchase price after the closing date to reflect the change in book value. That provision, section 2.5 of the Purchase Agreement entitled "Post–Closing Inventory Adjustment," is at issue here.

Pursuant to section 2.5, within thirty days after the closing date, Conopco was to deliver to Roll a statement of the book value of the Inventory reflecting a physical count of the Inventory conducted by Conopco on the closing date (the "Closing Date Inventory Statement"). (Purchase Agreement § 2.5(a)). Roll then had thirty days to notify Conopco in writing of any objections to the calculation; if Roll failed to do so, the Closing Date Inventory Statement would become final and binding. (Purchase Agreement § 2.5(b)). If Roll objected, however, and the parties were unable to come to an agreement within thirty days, section 2.5 provided that the dispute would be submitted to an arbitrator for a "final and binding" decision (Purchase Agreement § 2.5(b)). The parties had ten days from the final determination of the Inventory's book value to compensate for any shortfall or excess. (Purchase Agreement § 2.5(c)).

## B. *The Inventory Dispute and the Parties' Negotiations*

On September 7, 1995, Conopco delivered a Closing Date Inventory Statement to Roll, stating that the book value of the Inventory transferred as of the closing date was $5,512,634. (Compl.¶ 11). Hence, Conopco contended that it was entitled to an adjustment of $2,452,634,[1] the amount by which the claimed closing date Inventory exceeded the December 31, 1994 Inventory figure. Roll objected to the statement and the parties "mutually extended the applicable time periods to facilitate settlement negotiations." (Compl.¶ 14). These negotiations continued into early 1997. (Compl.¶ 15). Plaintiff contends that it was not until "early 1998," after it attempted further discussions with defendants regarding the Closing Date Inventory Statement, that defendants notified plaintiff that they would not arbitrate or settle the claim (the "Inventory Adjustment claim"). (Compl.¶¶ 16–17). It is undisputed that the parties never submitted the claim to an arbitrator. It is also undisputed that Roll never paid Conopco any portion of the $2,452,634 Conopco claims it is owed pursuant to section 2.5 of the Purchase Agreement.

## C. *The California State Court Action*

In December 1996, apparently in the midst of these negotiations, defendants Roll and Paramount sued Conopco and its parent company, Unilever United States, Inc. ("Unilever"), in California state court alleging that Conopco and Unilever breached representations and warranties contained in the Purchase Agreement and defrauded Roll and Paramount "by falsely inflating the Fruit Roll sales figures and falsely understating the expenses for the periods prior to the sale." (Def. Mem. at 2; *see* California Compl., annexed to the Affidavit of Lawrence B. Gutcho ("Gutcho Aff.") as Ex. B). Conopco did not raise its Inventory Adjustment claim in its answer to the California complaint. Nor did Conopco assert the claim as a cross-complaint in the California action. (Gutcho Aff., Exs. D, E). Instead, Conopco waited until May 1998 to raise the issue when it moved in the California action to compel arbitration of the Inventory Adjustment claim or for leave to file a cross-complaint. (Compl. ¶ 18; Gutcho Aff., Ex. E).

In June 1998, the California Superior Court denied both prongs of the motion. (Compl.¶ 19). Conopco appealed. On September 23, 1998, the California Court of Appeal denied Conopco's petition for a writ, effectively declining to hear the appeal of the cross-complaint ruling until after a final judgment in the California action. On December 15, 1998, the same appellate court denied Conopco's interlocutory appeal on its request to compel arbitration. (Compl.¶¶ 20–21). Plaintiff responded by filing the instant complaint on March 3, 1999.

Defendants claim that California Code of Civil Procedure § 426.30 (hereinafter "§ 426.30") bars Conopco from asserting its Inventory Adjustment claims in this Court. They further contend that Conopco's waiver of its right to arbitrate the Inventory Adjustment claims bars Conopco from asserting those claims here. Finally, defendants request that this Court dismiss or stay this action in deference to the pending California proceeding.

## *DISCUSSION*

## A. *California's Compulsory Cross–Complaint Statute*

Under California law, a defendant in an action is required to assert as a "cross-complaint" any "related cause of action." Cal.Civ.Proc.Code § 426.30. A related cause of action is defined as "a cause of action which arises out of the same transaction, occurrence, or a series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." Cal.Civ.Proc.Code § 426.10. Failure to bring a timely cross-complaint results in a waiver of that cause of action.

---

**1.** Plaintiff's complaint actually seeks $2,462,- 634, the result of a subtraction error.

The waiver provision, § 426.30, states in relevant part:

> [e]xcept as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

Cal.Civ.Proc.Code § 426.30(a). A defendant who fails to assert a timely cross-complaint may seek permission from the California court, pursuant to § 426.50, to assert the lapsed cause of action. Section 426.50 mandates that it "shall be liberally construed to avoid forfeiture of causes of action." Cal.Civ.Proc.Code § 426.50.

### B. *Application*

Conopco does not dispute that the claims it asserts here are related to those brought by Roll and Paramount in the California proceeding. Indeed, recognizing that it should have asserted its Inventory Adjustment claims at the time it answered the California complaint, Conopco made a § 426.50 motion requesting leave to file an untimely cross-complaint.[2] Conopco's motion was denied and the California Court of Appeal declined to hear the matter on appeal prior to the entry of judgment.

Conopco argues, however, that no final, non-appealable judgment has been entered in the California action, and that the § 426.30 therefore cannot bar its claims. To support its argument, Conopco notes that the doctrine of *res judicata* does not apply in the absence of a final judgment on the merits.[3] *See Busick v. Workmen's Compensation Appeals Bd.*, 7 Cal.3d 967, 104 Cal.Rptr. 42, 500 P.2d 1386, 1391–92 (1972) (In Bank); *Castro v. Higaki*, 31 Cal.App.4th 350, 37 Cal.Rptr.2d 84, 87 (1994).[4]

The doctrine of *res judicata* is not at issue in this case, however, nor are the Federal Rules of Civil Procedure or principles of collateral estoppel. Rather, this case concerns the proper interpretation of California's compulsory cross-complaint statute, § 426.30, and the issue is whether § 426.30 bars Conopco's claims when no final judgment has been entered in the California action where Conopco failed to file a cross-complaint. Conopco's interpretation of § 426.30 is rejected and I hold that § 426.30 may be applied in the absence of a final judgment, for three reasons.

First, the plain language of § 426.30 demonstrates that a final judgment is not required. The provision makes no reference to a final judgment, and if the California state legislature had intended the waiver to be applicable only upon the entry of a final judgment, surely it would have inserted words to that effect. It did not. *Cf. Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. New York State Dep't of Envtl. Conservation*, 17 F.3d 521, 531 (2d Cir.1994) ("[A] court should presume that a statute says what it means.... In the usual case, where the language of the statute is clear, that is the end of the analysis.") (internal citation omitted). This in-

---

**2.** Conopco alleges that its failure to file a timely cross-complaint was attributable to defendants' conduct in leading Conopco to believe those claims would be arbitrated if a settlement were not reached. (Pl. Mem. at 6). Neither plaintiff's good faith in failing to comply with § 426.30 nor defendants' conduct in inducing the waiver is before this Court.

**3.** Defendants concede that Conopco retains the right to "challeng[e] the trial court's order on a direct appeal from the final judgment." (Def. Mem. at 7).

**4.** California law would apply to determine if plaintiff's claims were precluded. Pursuant to the Full Faith and Credit Clause of the Constitution, federal courts must give state court judgments "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir.1997) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).

terpretation is buttressed by the fact that the California legislature has chosen to codify the doctrine of *res judicata* in a separate statutory provision, Cal.Civ.Proc. Code § 1908, which does explicitly require a "judgment or final order." *See* Cal.Civ. Proc.Code § 1908; *Castro,* 37 Cal.Rptr.2d at 87 (doctrine of *res judicata* is "expressed statutorily in Code of Civil Procedure section 1908").[5]

Second, the purpose of § 426.30 is "to provide for the settlement in a single action of all conflicting claims between the parties arising out of the same transaction and thus to avoid multiplicity of actions and conflicting judgments." *Saunders v. New Capital for Small Bus., Inc.,* 231 Cal.App.2d 324, 41 Cal.Rptr. 703, 710–11 (1964) (internal citation omitted) (construing § 439, predecessor to § 426.30). This purpose would not be served by permitting a party who has failed to timely assert a related cause of action to cure his defect simply by commencing another action in a different forum anytime before judgment is final. Moreover, a contrary holding would eviscerate the discretionary aspect of § 426.50; a party denied the opportunity to file a late cross-complaint would face not a waiver but a new judge.

Third, although the case law is sparse, it supports the conclusion that a final judgment is not a pre-requisite to a waiver. The parties have not cited, nor has the Court been able to find, any California state court case law squarely addressing the issue. In a recent California case interpreting § 426.30, the Court of Appeal held that the "plain meaning" of the statute barred a claim not asserted as a cross-complaint even where the complaint in the first action was voluntarily dismissed by the plaintiff. *See AL Holding Co. v.*

O'Brien & Hicks, Inc., 75 Cal.App.4th 1310, 89 Cal.Rptr.2d 918, 920, (1999). The court did not discuss the requirement of a final judgment, but significantly § 426.30 was held to apply even though the merits were never reached.

The California Court of Appeal has explicitly analogized § 426.30 to the doctrine of *res judicata* in the context of pleading affirmative defenses. *See Hulsey v. Koehler,* 218 Cal.App.3d 1150, 267 Cal.Rptr. 523, 526 (1990). The holding of *Hulsey* is that § 426.30, like *res judicata* and unlike collateral estoppel, is a defense that must be specially pleaded. The court focused on the fact that § 426.30, like *res judicata,* is a complete defense barring even claims that were not actually litigated and decided. *See id.* at 526–27. The *Hulsey* court was not presented with the question of whether a final judgment is a necessary prerequisite to raising a § 426.30 defense. The Ninth Circuit has applied the § 426.30 bar without interpreting the statute as requiring a final judgment, but it too was not squarely presented with the issue at bar because a final judgment had been rendered in the case. *See Cheiker v. Prudential Ins. Co. of America,* 820 F.2d 334, 336 (9th Cir.1987).[6]

There is a recent unreported Ninth Circuit case involving strikingly similar facts, that is directly on point. *See Pietak v. State Farm Fire & Cas. Co.,* No. 98–15089, 1999 WL 599478 (9th Cir. Aug.10, 1999). In *Pietak,* the Ninth Circuit confronted the very question before this Court and concluded that " § 426.30 may be applied when a judgment in the first action is not immune from direct attack." 189 F.3d 474, 1999 WL 599478, at *2. The fact that the Ninth Circuit chose not to publish

---

5. Moreover, the Legislative Committee Comment to § 426.30 distinguishes the statute from the principle of *res judicata,* noting that where § 426.30 is inapplicable, "independent application of the rules of *res judicata* and collateral estoppel, if any, is not affected."

6. The Second Circuit briefly discussed § 426.30 in *In re Interstate Stores, Inc.,* 558

F.2d 1046, 1047 (2d Cir.1977). There, the court simply concluded that a California action that has come to a final judgment is entitled to *res judicata* as to all matters including "relevant issues which could have been but were not raised and litigated." *Id.* The case does not hold that § 426.30 requires a final judgment.

*Pietak* leaves this Court in a quandary. The Ninth Circuit rule governing citation of unpublished opinions states that an unpublished case "may not be cited to or by" the courts of the Ninth Circuit. *See* 9th Cir. R. 36–3. The rule is silent as to citation by courts outside the circuit. In these circumstances, I assume *Pietak* is not binding precedent. It is, however, directly on point and persuasive; accordingly, I adopt the reasoning set forth therein.[7]

Ideally, the question presented in this case would be certified to the California Supreme Court. Unfortunately, that option is unavailable to this Court. *See* Cal. Ct. R. 29.5(a); *California Prolife Council Political Action Comm. v. Scully*, 989 F.Supp. 1282, 1290 (E.D.Cal.1998) (district court may not certify question), *aff'd*, 164 F.3d 1189 (9th Cir.1999); *cf. Henderson v. INS*, 157 F.3d 106, 124 n. 18 (2d Cir. 1998) (district court may not certify question to New York Court of Appeals). In the absence of California precedent as a guide, I am constrained to follow the plain text of the statute, particularly when doing so advances its intended purpose.

## CONCLUSION

For the reasons stated herein, defendants' motion to dismiss the complaint is granted and I hold that plaintiff's claims in this action are barred by § 426.30. I do not reach defendants' alternative arguments in favor of dismissal or a stay of this action. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

---

**7.** I recognize that decisions interpreting the laws of other states and Fed.R.Civ.P. 13 have reached a contrary conclusion. *See, e.g. Cheezem Dev. Corp. v. Maddox Roof Serv., Inc.,* 362 So.2d 99, 100 (Fla.App.1978), *cert. denied,* 368 So.2d 1370 (Fla.1979); *Bellmore Sales Corp. v. Winfield Drug Stores, Inc.,* 187 F.Supp. 161, 162 (S.D.N.Y.1960); *see also* Charles Alan Wright, Arthur R. Miller & May Kay Kane, 6 Fed. Prac. & Proc. Civ.2d § 1418 (1990). These cases, however, addressed other statutes and rules and not Cal.Civ.Proc. Code § 426.30.